IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOUIS SALAZAR,<br><br>        Petitioner,<br><br>    v.<br><br>HEIDI M. LACKNER,<br><br>        Respondent. | Case No.: C 15-0191 YGR (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND CERTIFICATE OF APPEALABILITY** |

## INTRODUCTION

The matter is now before the Court for consideration of Louis Salazar's ("Petitioner") *pro se* Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 challenging his 2012 conviction in Monterey County Superior Court. For the reasons set forth below, the petition for such relief is DENIED. In addition, no certificate of appealability will be issued.

## BACKGROUND

**I.**    **Case History**

In 2012, a Monterey County Superior Court jury found Petitioner guilty of the 1977 murder of 86-year old Teressie White. (Memo., Ex. 1 (Clerk's Transcript, Vol. 1, p 25).) The trial court sentenced Petitioner to a term of life in state prison, with the possibility of parole. (*Id.*, Ex. 1 (Clerk's Transcript, Vol. 2, pp. 533-34, 536).) The California Court of Appeal affirmed the judgment. (*Id.*, Ex. 7.) Petitioner's petition for review was denied by the

California Supreme Court. (*Id.*, Ex. 9.) Petitioner's petition for a writ of certiorari in the United States Supreme Court was denied. (*Id.*, Ex. 11.)

On January 13, 2015, Petitioner filed this federal habeas petition raising a claim that Petitioner's right to due process was violated because admission of certain evidence was improper due to a lack of adequate foundation. Respondent was ordered to show cause why the petition should not be granted. Respondent filed an Answer with a supporting memorandum and exhibits. Although given an opportunity, Petitioner did not file a Traverse.

## II. Facts

The evidence at trial showed that, in April 1977, 86-year-old Teressie White was found deceased in her bedroom at home. (Memo., Ex. 7 ("Op.") at 2.) Deputy Anzini arrived at White's house and observed broken glass, and a torn front door screen. (*Id.*) Detective Handley, who arrived an hour later, noticed a blue bathrobe and a chair that looked to have been propped up against the door to keep it closed. (*Id.*) Handley placed the robe and bloody sheets from White's bedroom into evidence. (*Id.*) Near White's foot was a clear plastic bag that looked to contain marijuana. (*Id.*) Handley saw Les Deicke,[1] a lab technician with the sheriff's department, at the crime scene. (*Id.*)

Raymond Jensen, a criminalist, was also at the crime scene that night and also saw Deicke. (*Id.*) Jensen took samples from some of the blood stains at the scene. (*Id.*) He also accepted into evidence fingernail scrapings that he received from Deicke. (*Id.*) The envelope containing the fingernail scrapings was labeled "fingernail scrapings, right hand, Mrs. White, victim." (*Id.*) Along with the fingernail scrapings was paperwork, signed by Deicke and a laboratory manager. (*Id.* at 2-3.) Jensen examined the fingernail scrapings and found a small blue microscopic fiber. (*Id.* at 3.)

Sergeant Terry Kaiser was familiar with Deicke's work habits because they had previously worked together for over three years when Kaiser was an investigator. (*Id.*) Kaiser had seen Deicke take fingernail scrapings from murder victims in more than 30 cases.

---

[1] Deicke was unavailable at trial because he was deceased.

(*Id.*)  Kaiser was familiar with Deicke's handwriting, and recognized the handwriting on the manila envelope containing the fingernail scrapings as Deicke's.  (*Id.*)

Petitioner was contacted by the police in both 1977 and 1994 in connection with the investigation into White's murder.  (*Id.* at 3-4.)  Petitioner stated that at the time of the murder, he was riding around in Watsonville with other people, including Vicky Berryman.  (*Id.* at 3.)  Petitioner was served a search warrant for blood and hair samples.  (*Id.* at 4.)

In 2006, Detective Martin Opseth was assigned to investigate White's homicide case.  (*Id.*)  Opseth sent cuttings from the bloody sheet, the blue bathrobe, and the fingernail scrapings to the crime lab for testing.  (*Id.*)  Angela Meyers, a senior criminalist, received as samples the fingernail scrapings and Petitioner's reference blood samples.  (*Id.* at 4-5.)  Meyers extracted DNA from the fingernail scrapings and created a DNA profile.  (*Id.* at 5.)  The DNA contained both male and female contributors.  (*Id.*)  Meyers found the DNA profile to match 12 loci with Petitioner's DNA profile, and believed there was strong evidence that Petitioner was the source of the male DNA in the fingernail scrapings.  (*Id.*)  A statistical analysis concluded that the probability of a random contributor having the same DNA profile as the fingernail scrapings was "1 in 3.5 trillion for the African American population, 1 in 630 billion for the Caucasian population, and 1 in 1.3 trillion for Hispanics."  (*Id.*)

Amy Rojas, another senior criminalist, received cuttings from the blue bathrobe taken from White's home.  (*Id.*)  Rojas tested the cuttings, and developed a DNA mixture profile.  (*Id.*)  Rojas compared the male DNA profile from the bathrobe cuttings with the DNA profile from Petitioner's blood sample, and determined that alleles and markers from Petitioner's reference samples were found in the DNA profile from the bathrobe.  (*Id.*)  A statistical analysis concluded that the probability of a random person would be included as a possible contributor to the DNA profile mixture was "1 in 3.5 million for African Americans, 1 in 1.6 million for Caucasians, and 1 in 3.5 million for Hispanics."  (*Id.*)

At trial in 2012, the criminalists testified about their findings, including the DNA obtained from the blue bathrobe and the fingernail scrapings.  (*Id.* at 6.)  Petitioner was convicted of first degree murder, and sentenced to life with the possibility of parole.  (*Id.*)

3

As grounds for federal habeas relief, Petitioner stated that there was inadequate foundation for the admission of evidence in violation of his right to due process under the Fourteenth Amendment. (Pet. at 5.) Liberally construing the petition, the Court found that Petitioner stated a cognizable claim that his right to due process was violated when the trial court improperly admitted evidence of which there was no adequate foundation.[2]

## STANDARD OF REVIEW

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal

---

[2] The Court notes that in the petition under "Claim Two," Petitioner writes, "Appellant Reply Brief page 1 to 5." (Pet. at 5.) However, no "reply brief" was filed with the Petition, and Petitioner did not include any details or explanation as to what "Claim Two" was about. Accordingly, the Court did not order Respondent to address this unspecified claim, and the claim is dismissed.

4

law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id*. at 409.

## DISCUSSION

Petitioner claims that the admission of evidence obtained from the fingernail scrapings lacked adequate foundation. On direct appeal, Petitioner argued that the evidence did not sufficiently support an adequate chain of custody with respect to the fingernail scrapings.

As an initial matter, the Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (finding that trial court's admission of irrelevant pornographic materials was "fundamentally unfair" under Ninth Circuit precedent but not contrary to, or an unreasonable application of, clearly established Supreme Court precedent under § 2254(d)). Without such "clearly established" law, the state court's rejection of Petitioner's claim cannot be contrary to, or an unreasonable application, or clearly established federal law, and Petitioner is not entitled to habeas relief. *See Knowles v. Mirsayance*, 556 U.S. 111, 122 (2009) (holding that "it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court"); *Wright v. Van Patten*, 522 U.S. 120, 126 (2008) (per curiam) ("Because our cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law." (Internal quotation marks omitted)).

Alternatively, the admission of evidence is not subject to federal habeas review unless a specific constitutional guarantee is violated or the error is of such magnitude that the result is a denial of the fundamentally fair trial guaranteed by due process. *See Henry v. Kernan*, 197 F.3d 1021, 1031 (9th Cir. 1999). Failure to comply with state rules of evidence is neither a necessary nor a sufficient basis for granting federal habeas relief on due process grounds.

*See id.*; *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991). While adherence to state evidentiary rules suggests that the trial was conducted in a procedurally fair manner, it is certainly possible to have a fair trial even when state standards are violated; conversely, state procedural and evidentiary rules may countenance processes that do not comport with fundamental fairness. *See id.* The due process inquiry in federal habeas review is whether the admission of evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair. *See Walters v. Maass*, 5 F.3d 1355, 1357 (9th Cir. 1995).

Further, in order to obtain habeas relief on the basis of an evidentiary error, a petitioner must show that the error was one of constitutional dimension and that is was not harmless under *Brecht v. Abrahamson*, 507 U.S. 619 (1993). He must show that the error had "a substantial and injurious 'effect on the verdict.'" *Dillard v. Roe*, 244 F.3d 758, 767 n.7 (9th Cir. 2001) (quoting *Brecht*, 507 U.S. at 623).

Here, the California Court of Appeal found that although the chain of custody was not perfect, the evidence showed that both Jensen and Handley saw Deicke at the crime scene; Kaiser testified that he worked with Deicke for over three years, and had observed Deicke take fingernail scrapings from murder victims in over 30 cases; Deicke's custom and habit was to use a "fine point blue pen" to label the manila envelopes; Jensen received an envelope from Deicke that was labeled as White's fingernail scrapings; and Kaiser recognized Deicke's handwriting on the Manila envelope containing the fingernail scrapings. (Op. at 17-18.) The state appellate court noted that there was no indication that suggested the evidence had been tampered with, mishandled, or contaminated. (*Id.* at 18.) In addition, Petitioner had the opportunity to cross-examine the prosecution's witnesses to point out that no one had actually witnessed Deicke take the fingernail scrapings during the investigation. (*Id.*) Under such circumstances the court concluded that it was proper to admit the evidence. (*Id.*) Thus, the admission of the evidence about the fingernail scrapings was neither arbitrary or so prejudicial as to implicate due process. *See Walters*, 45 F.3d at 1357.

And even if there was error, there is no showing that the error was prejudicial. The record instead shows that there was other evidence to support Petitioner's conviction based on

the statistical analysis of Petitioner's DNA sample with the sample obtained from the blue bathrobe found inside White's bedroom, and the contradictory fact that Petitioner had told police that he had never entered White's home or had any physical contact with her. It simply cannot be said that any error resulting from the introduction of the fingernail scrapings had a substantial injurious effect on the verdict. *See Brecht*, 507 U.S. at 637.

The California Court of Appeal's rejection of Petitioner's claim cannot be said to be contrary to, or an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254(d). Petitioner is not entitled to federal habeas relief on this claim.

## CONCLUSION

For the foregoing reasons, this Court DENIES the petition for writ of habeas corpus. A certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the Court of Appeals. The Clerk shall enter judgment in favor of Respondent and close the file.

IT IS SO ORDERED.

DATED:   February 16, 2016

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**